# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| MAURICE BERNARD YOUNG, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV411-175 |
| | ) | [CR410-044] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **REPORT AND RECOMMENDATION**

Maurice Bernard Young has filed a motion under 28 U.S.C. § 2255 seeking to vacate his conviction and sentence on the ground that his defense attorney provided ineffective representation. Specifically, he says that his attorney was deficient both in failing to challenge his status as an armed career offender under 18 U.S.C. § 924(e), and in failing to consult with him about an appeal or comply with his request that an appeal be filed. Docs. 1 & 2. As to the latter claim, the government conceded in its response that an evidentiary hearing was required to resolve disputed factual issues, as Young's defense attorney had asserted that he not only consulted with Young about an appeal but "encouraged" him to appeal once Young indicated that he did not wish to do so. Doc. 5-

1 (Martin G. Hilliard aff.). The Court agreed with the government's assessment that a § 2255 hearing was necessary and appointed counsel to represent Young at that hearing. As Young has failed to establish that he is entitled to an out-of-time appeal, the Court must proceed to address all grounds for relief asserted in his motion.

Shortly before his scheduled trial on drugs and firearms charges in *United States v. Young*, No. CR410-44 (filed Feb. 3, 2010),[1] Young pled guilty to possessing a firearm as a felon pursuant to a plea agreement that exposed him to a statutory minimum sentence of 15 years because he qualified as an armed career criminal under 18 U.S.C. § 924(e). Cr. doc. 36 (plea agreement). That statute provides that a person convicted of possessing a firearm as a felon who "has three previous convictions . . . for a violent felony or a serious drug offense . . . shall be . . . imprisoned not less than fifteen years . . . ." 18 U.S.C. § 924(e)(1). In the Presentence Investigation Report ("PSI"), the probation officer determined that Young had four qualifying convictions under the statute and calculated an advisory guidelines range of 180 to 210 months. PSI ¶¶

---

[1] The indictment charged Young with possession of a firearm as a felon and as an armed career offender, possession of a firearm with an obliterated serial number, possession of crack cocaine, and possession of marijuana. Cr. doc. 1. The Court will use "Cr. doc." when citing to the criminal case and "doc." when citing to the present record.

19, 53. Young did not object to the probation officer's calculations, which were adopted by the district judge at sentencing. Sent. Hrg. Tr. (Cr. doc. 42) at 4. The Court sentenced Young to the mandatory minimum prison term of 180 months (15 years). *Id.* at 5. Young did not file an appeal.

## I. Young has no right to an out-of-time appeal

The Court scheduled an evidentiary hearing to resolve a factual dispute as to whether Young's defense attorney ever consulted with him about an appeal (Young says that he did not; Hilliard says that he did) and whether Young ever requested that an appeal be filed (Young says that he repeatedly requested an appeal; Hilliard says that Young not only did not request an appeal but expressly told him not to file one).[2] That task was complicated by an uncertain record of past events, unauthenticated documentation at the hearing, clear evidence of misrecollection of a pertinent fact by Mr. Hilliard, and testimony by Mr.

---

[2] It is well established "that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), thus entitling the defendant to an out-of-time appeal without showing any meritorious grounds for an appeal. *Id.* Further, even where a defendant fails to express an interest in an appeal, defense counsel generally has a duty to consult with his client about the matter, advising him of the advantages and disadvantages of taking an appeal and making a reasonable effort to determine his client's specific wishes. *Id.* at 478-79.

Young that directly contradicted his previous sworn testimony before this Court at sentencing. After much consideration and struggle with this confused and muddled record,[3] the Court finds that Mr. Hilliard is the more credible historian on the central issue of whether he consulted with his client about an appeal and complied with his client's wishes in that regard.

Hilliard's testimony at the evidentiary hearing was consistent with his earlier affidavit (admitted as Movant's Ex. 1). He stated that he met with Young the day before sentencing, discussed the PSI and the guidelines range, explained that he expected Young to receive the 15-year mandatory minimum sentence, and pleaded with Young to disclose to the

---

[3] At the evidentiary hearing government counsel acknowledged the uncertainties of such a confused record and the difficulties faced by the Court in making its credibility choice, and suggested that "it may be the better part of discretion to allow the out-of-time appeal without necessarily resolving the other questions." Tr. 53; *id.* at 54 (where the government declined to stipulate that Young was entitled to an out-of-time appeal but conceded "that the record would support such a finding."). While sorely tempted to accept this invitation, the Court does not believe that it can avoid the difficult task of resolving the credibility issue and making a specific finding as to whether Hilliard did or did not fulfill his duty to determine his client's informed wishes regarding an appeal and then comply with his client's instructions. Only if Hilliard is found to have shirked that duty can Young's right to an appeal be resurrected. *United States v. Phillips*, 225 F.3d 1198, 1199-2000 (11th Cir. 2000) ("the times for filing notices of appeal . . . are jurisdictional and strictly applied," and a failure to meet the deadline can only be excused where the Court finds an infringement of the defendant's constitutional rights, such as a denial of his Sixth Amendment right to the effective assistance of counsel). Thus, the Court must meet the credibility issue head-on.

government the source of the firearm so that he might reduce his sentence. Tr. at 17, 45-46, 48-49. Hilliard advised Young of his right to appeal, but Young indicated that he did not desire to appeal. *Id.* at 45-46. Hilliard recalled receiving a letter from Young about 30 days after sentencing requesting that an appeal be filed, but as the deadline for appealing had passed, he wrote back explaining that Young was out of time. *Id.* at 17.

Hilliard testified that he had a firm memory of this meeting occurring at the Liberty County Detention Center. *Id.* at 17, 45-47. But evidence adduced at the evidentiary hearing established that while Young was initially confined at the Liberty County facility (from February 24 to May 3, 2010), he was transferred by the Marshal to the Bulloch County Jail where he remained confined for the two-month period preceding his sentencing on July 9, 2010. Gov't Ex. 1 (U.S. Marshal's Custody/Detention Report). In light of this evidence, Hilliard conceded that his memory as to the *location* of his presentence conference with his client was "[a]dmittedly . . . faulty." Tr. at 46. But though he had no recollection of ever meeting with Young at the Bulloch County Jail, he was positive that he consulted with Young about both the

PSI and his appellate rights and rejected a suggestion by Young's attorney that there was "no possible way" that he ever met with Young at the Bulloch jail. *Id.* at 46-47. At no point did Hilliard ever waver from his assertion that he met with Young before sentencing to discuss the PSI, the expected sentence, and Young's right to appeal.

During the hearing Young's attorney referenced some documentation that he had received from the Bulloch County Jail that purportedly reflected that Young had no visitors during the entire period of his detention at that facility. *Id.* at 7, 42-43. That document, which had been faxed to Young's counsel by a jail official who refused to appear without a subpoena, was never offered into evidence or made part of the record in these proceedings.[4] The government, which had no opportunity to question the jail official about the document or the jail's visitation procedures, never stipulated to the document's admissibility. *See id.* at 43 (where the Court noted that the government "is not stipulating to your document."). Tr. at 43. The document, therefore, is not before the Court.

---

[4] Young's counsel explained that he had just received the jail document "yesterday" and said that he had no "opportunity" to secure the necessary subpoena. Tr. 6-7. But the Court notified counsel of his appointment on May 30, 2012, a month before the scheduled hearing, and he never requested that the hearing be continued, although the Court offered to do so. Tr. at 8.

6

But even if the Court were to accept counsel's representation that the jail's sign-in sheet reflected no visitors, this would not preclude a finding that Hilliard in fact consulted with Young immediately prior to sentencing. After it was established that Young was housed at the Bulloch County Jail for several months prior to sentencing, Hilliard pointed out that while he had "no independent recollection of seeing Mr. Young in the Bulloch County Jail," he had other clients at that facility during this time frame. *Id.* at 46. He further explained that under the jail's sign-in procedure, an attorney seeking to visit a client must furnish his bar card and driver's license, and then write down the date, time, and name of the inmate of being visited: "The only thing is, is the inmate you write down, if you have a number of inmates you're going to see, you don't have room to put down every inmate." *Id.* at 47. Thus, even if Young's counsel's abbreviated summary of the never-admitted document is accepted as evidence, the record leaves open the possibility that Hilliard traveled to the Bulloch County Jail, listed another one of his clients on the jail's sign-in sheet, and then met with multiple clients (including Young) during that visit. So, Hilliard offered a sound basis for

rejecting the notion that the sign-in sheet proved that there was "no possible way" that he ever met with Young at the Bulloch County Jail.

Further bolstering this conclusion is Mr. Young's own admission that he *read the PSI*. *Id.* at 28 ("Yeah, I read it."). The draft PSI was sent by overnight delivery to defense counsel on May 6, 2010, *id.* at 49, (and the revised PSI was forwarded on June 14, 2010, PSI at 1), *after* Young had been transferred to the Bulloch County Jail. Since Mr. Young was at the Bulloch County Jail when the PSI was forwarded to defense counsel, it is reasonable to infer that Hilliard brought that document to the jail for Young to read.[5] Moreover, at no point during the § 2255 hearing did Mr. Young ever testify that Hilliard failed to meet with him at the Bulloch County Jail[6] -- he just claimed that Hilliard never discussed the PSI or his appellate rights with him. Tr. at 22-23. Thus, the document Young's counsel referred to during the hearing, even if admitted as evidence, would not cinch the case for Mr. Young as his counsel supposed.

---

[5] Young never suggested any other source for the PSI but Hilliard.

[6] Young's counsel asked whether Young had heard him mention earlier that the jail's sign-in sheet reflected that Young "didn't have any visitors during that particular time," but counsel never asked Young to confirm that as fact. Tr. 22, 42.

8

Young's testimony at the hearing differed not only from Hilliard's but also from his own prior testimony before this Court. Though Young never testified that Hilliard failed to visit him at the Bulloch County Jail, he denied that Hilliard ever informed about his opportunity to appeal. He testified that Hilliard "told me that [the case] was over, that it wasn't nothing I could do but get 15 years" unless he "cooperated with the feds." *Id.* at 22. Young admitted that he read the PSI but stated that he did not understand it, *id.* at 28, and represented that he and Hilliard "never talked about my PSI no type of way." *Id.* at 31. This testimony directly conflicts with Young's sworn testimony at sentencing,[7] where he answered affirmatively to the district judge's question whether he had "had an opportunity to read and *discuss* the presentence report with [his] lawyer." Sent. Tr. (Cr. Doc. 42) at 4 (emphasis added). He further acknowledged that he had no objections to the PSI's factual accuracy or to the probation officer's calculation of the sentencing guidelines. *Id.* When asked to explain this discrepancy at the § 2255 hearing, Young at first denied lying to the district judge. Tr. at 41. But he then elaborated

---

[7] It also conflicts with Young's statement in his response brief that "he informed counsel, to inform the . . . Court that he was not an a [sic] Armed Career Offender." Doc. 6 at 4. This statement suggests that Young *did* speak with Hilliard about the PSI's finding that he qualified as an armed career criminal.

9

that because his lawyer told him the judge had discretion under the guidelines to sentence him anywhere between 15 and 17 1/2 years, he was prepared to "say or do whatever [he] had to say or do to get the low end of the guideline." *Id.* This is a remarkable confession, susceptible of the reasonable interpretation that Young was willing to lie if he thought it was to his advantage.

Mr. Young's testimony that he never discussed the PSI with Hilliard is not credible. Young conceded that he read the PSI (which the probation officer sent to Hilliard, not to Young) and that Hilliard discussed with him the sentencing guidelines range calculated by the probation officer in that report (for he conceded that counsel told him the judge could sentence him anywhere from 15 to 17 1/2 years, which reflects precisely the guidelines calculations made by the probation officer in the PSI, i.e., 180 to 210 months). *Id.* at 41. This testimony is simply inconsistent with his earlier testimony that his attorney never talked with him about the PSI "no type of way." Moreover, to accept Young's testimony on this point -- testimony which cannot be reconciled with his testimony to the district judge at sentencing that he had discussed the PSI with counsel -- the Court would necessarily have to

find that Mr. Hilliard effectively suborned perjury during the sentencing hearing, for certainly counsel would have known whether his client was lying when he told the district judge that they had discussed the PSI. The Court finds that Young was telling the truth when he told the district judge that he had read and discussed the PSI with his attorney. It rejects Young's testimony at the § 2255 hearing that no such discussions ever occurred.

The Court also disbelieves Young's testimony that defense counsel never consulted with him about an appeal or determined whether he wished to file an appeal. Young denied that he was ever told about an opportunity to appeal, *id.* at 22-23, and felt that his case "was over."[8] *Id.* at 23. Nevertheless, Young claimed that he called Hilliard's office and wrote him some four or five letters indicating a desire to appeal. He failed to say *when* he made these requests, however. Thus, he offered no testimony that he made a timely request for an appeal -- i.e., within 14 days of sentencing.

---

[8] If Young truly had been misled into the belief that he had no right to appellate review, the district judge disabused him of that notion at sentencing when he informed Young "that it is your right to appeal from this sentence within 14 days from this date; and a failure to appeal within the 14-day period shall be a waiver of your right to appeal." Sent. Tr. at 8.

11

Hilliard stated in his affidavit (which Young introduced as evidence at the hearing, *id.* at 13) that he not only told Young of his right to appeal but "encouraged his appeal." Movant's Ex. 1. Hilliard reminded Young that he faced a 15-year mandatory minimum sentence and "advised him if he had any questions about his sentence he should appeal." *Id.* Young, however, disavowed any interest in pursuing an appeal. *Id.*

When asked about his affidavit by Young's counsel, Hilliard explained that it is his practice to encourage every defendant he represents to file an appeal, *id.* at 14-16, for even where he personally sees no meritorious grounds for an appeal, "[i]t never hurts to have a fresh set of eyes on a case, which can come from an appeal."[9] *Id.* at 15. Although Hilliard conceded that he had a faulty memory as to where the conversation occurred, he was certain that he consulted with Young about an appeal: "We discussed the facts of the case, the discovery, the

---

[9] Hilliard disagreed with counsel's suggestion that the practice of encouraging frivolous appeals creates an ethical issue, explaining that "[e]ven if you don't see any issues, you can always do an Anders brief." Tr. at 14; *see Anders v. California*, 386 U.S. 738, 744 (1967) (while defense counsel is obligated to file a direct appeal if his client so directs, if counsel ultimately determines that there are no meritorious grounds for appeal he should so advise the appellate court and request permission to withdraw, supplying a brief referring to anything in the record that might arguably support the appeal).

PSI, went over the guidelines range. I advised him of his right to appeal, and at that particular moment and time, he didn't want to appeal." *Id.* at 45-46; *id.* at 14 (Hilliard "encouraged" Young to appeal). Although Young finally expressed an interest in appealing, Hilliard did not receive Young's letter until some "thirty days after sentencing," but by that point the deadline had passed. *Id.* at 17.

The Court credits Hilliard's testimony that he not only consulted with his client about an appeal but, following his usual practice, encouraged him to file an appeal. Young ignored that advice, just as he ignored Hilliard's advice to disclose the source of the firearm that he was charged with possessing so that he might receive a sentence below the statutory minimum of 15 years. *See* 18 U.S.C. § 3553(e) (authorizing a court to impose a sentence below a statutory minimum upon motion by the government reflecting that the defendant has provided "substantial assistance in the investigation or prosecution of another person"). Young has failed to demonstrate either that his attorney neglected to consult with him about an appeal or that he requested an appeal before the time for doing so expired. In fact, the record persuades the Court

13

that Young specifically told his attorney that he did not wish to pursue an appeal.

As Young's counsel pointed out early in his cross-examination of Mr. Hilliard, the question before the Court is "basically a credibility issue. My client is saying you didn't tell him that he could appeal; you're saying that you told him he could appeal." Tr. at 12. While the evidentiary hearing illuminated a flaw in Hilliard's memory as to precisely where he met with Young, after considering all the evidence and testimony and wrestling with the inadequacy of the record, at the end of the day the Court credits Hilliard's testimony that such a meeting did occur, that he discussed the PSI and likely sentence with his client, and that he consulted with Young about an appeal but determined that Young did not desire to pursue an appeal. Because his attorney was not ineffective in failing to file a notice of appeal, Young is not entitled to an out-of-time appeal in this case. The Court, therefore, must proceed to address the remaining claim raised by Young's motion.

## II. Young's remaining claim is meritless

Young pled guilty to possessing a firearm as a felon under the terms of a plea agreement that contemplated a statutory minimum

sentence of 15 years because he qualified as an armed career criminal.[10] Cr. doc. 36 (plea agreement) at 2, 3. Young now claims that Hilliard was prejudicially ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), because he failed to challenge the Court's determination that Young had 3 or more "previous convictions . . . for a violent felony or a serious drug offense," as those terms are defined by the Armed Career Criminal Act, 18 U.S.C. § 924(e). Cr. doc. 39 at 8. He says that two of the prior convictions did not meet either definition and thus he was improperly classified as an armed career criminal. *Id.* at 8-13.

Young's PSI recounted *four* qualifying convictions, three "serious drug offenses" and one "violent felony" under 18 U.S.C. § 924(e)(2). PSI ¶¶ 19, 30. The first occurred in 1996, when Young possessed cocaine

---

[10] Young complains that the armed career criminal finding violated *Shepard v. United States*, 544 U.S. 13 (2005), "[b]y relying solely upon the P.S.I. Report" and failing to determine "the Statutorily prohibited act for which [he] was convicted." Doc. 2 at 9. *Shepard* limits the sources sentencing judges may use in determining whether a defendant's prior convictions qualify as predicate offenses under § 924(e) and specifically prohibits reliance upon "police reports and complaint applications." 544 U.S. at 16, 26. Young's PSI, however, does not rely upon such prohibited sources but instead cites to official state court records reflecting both the specific offenses to which Young pled guilty and the factual underpinings of the charges. PSI at ¶¶ 23, 24, 25, 27 (referencing the state court judgment and underlying indictment or other charging instrument, which documents remain available as part of the probation officer's "*Shepard*" file). *Shepard* expressly permits consideration of the "charging document" in determining whether a defendant pled guilty to a violent felony or serious drug offense under § 924(e). 544 U.S. at 16. The sentencing judge did not violate *Shepard* in relying upon a PSI that was based upon just such documentation.

15

with intent to distribute and later received a 5-year prison sentence. PSI ¶ 23. Then, in 1997, Young struck a police officer in the chest with his fist during a traffic stop, resulting in his guilty plea to *felony* obstruction of an officer and a ten-year sentence. PSI ¶ 24. That same year, Young sold cocaine and received a 10-year prison sentence. PSI ¶ 25. In 2000, Young was again indicted for the sale of cocaine and later pled guilty to the sale of the non-controlled substance "procaine," a local anesthetic, receiving a 7-year prison sentence. PSI ¶ 27.

Since Young qualified as an armed career criminal, the probation officer calculated his criminal history, credited his acceptance of responsibility, and arrived at an advisory guidelines range of 180 to 210 months' imprisonment. PSI ¶ 53. Young filed no written objections to the PSI. PSI, Addendum. And, as previously noted, he and Hilliard raised no objections to it at sentencing. Cr. doc. 42 at 4. The judge adopted the PSI's factual statements and guideline calculation. *Id.* Hilliard urged the mandatory minimum prison term. *Id.* at 4-5. The judge agreed and sentenced Young to 180 months in prison. *Id.* at 5.

Young faults Hilliard for failing to argue that his prior conviction for felony obstruction of an officer (in violation of O.C.G.A. § 16-10-24[11]) did not constitute a "violent felony" under 18 U.S.C. § 924(e)(2)(B). Cr. doc. 39 at 8-9. More specifically, he claims that Hilliard should have objected to the district judge's reliance on the PSI's description of that prior offense in concluding that it entailed violence. *Id.* at 9-10.

The Armed Career Criminal Act defines the term "violent felony" as meaning any felony offense that

> (1) *has as an element* the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(b) (emphasis added); *see also* U.S.S.G. § 4B1.2(a). Young admitted, per his failure to object to the PSI, that his conviction for felony obstruction of an officer involved the striking of a police officer. He ignores the fact that he, not just Hilliard, was asked if he disputed any part of the PSI, and he said that he did not. Cr. doc. 42 at

---

[11] That statute provides that "whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his official duties *by offering or doing violence to the person of such officer* . . . is guilty of a felony . . . [punishable by] not less than one nor more than five years." O.C.G.A. § 16-10-24 (emphasis added).

4. And as noted above, the Court finds that Young was telling the truth when he told the district judge that he had read and discussed the PSI with his attorney. It further finds that he understood it -- including the simple factual assertion that the offense involved the striking of a police officer.

It is established law that a sentencing judge is entitled to apply the armed career offender enhancement based on a defendant's assent to facts contained in the PSI. *Shepard*, 544 U.S. at 16; United *States v. Beckles*, 565 F.3d 832, 843 (11th Cir. 2009); *see also United States v. Anderson*, 442 F. App'x 537, 539 (11th Cir. 2011). Indeed, the district court may base its factual findings on undisputed statements in the PSI "even if there is an absence of supporting evidence." *Beckles*, 565 F.3d at 844. Here, the PSI's description of Young's conduct rested on an indictment that specifically charged Young with striking a police officer in the chest with his fist during a traffic stop. PSI ¶ 24. That indictment, and the judgment of conviction reflecting Young's guilty plea to that charge, was available to the Court as part of the probation officer's "*Shepard*" file. At sentencing, Young did not dispute that his felony obstruction conviction involved "doing violence" to a police officer

under O.C.G.A. § 16-10-24(b), and his § 2255 motion refers to no evidence to the contrary.

Georgia law criminalizes the obstruction of a law enforcement officer "by *offering or doing* violence to the person of such officer. . . . O.C.G.A. § 16-10-24(b). At the time of Young's conviction in 1997, the Georgia statute contained the same language. *See Lemarr v. State*, 188 Ga. App. 352 (1988); *Reese v. Herbert*, 527 F.3d 1253, 1272 n. 30 (11th Cir. 2008). The PSI, in reliance upon the state court record reflecting that Young struck a police officer "in the chest with his fist during a traffic stop," PSI ¶ 24, established that Young not only offered to do violence but actually engaged in violence when he obstructed the officer. Even if Young had not assented to the probation officer's finding that he committed a violent felony, the sentencing judge had sufficient judicial records from the state court to make such a finding. Young, therefore, has not shown that his attorney was ineffective.

In that this analysis affirms the existence of at least three qualifying convictions, the Court agrees with the government (Cr. doc. 45 at 11) that it is not necessary to reach Young's remaining argument that Hilliard was ineffective in failing to challenge his conviction for sale of a

19

non-controlled substance as not constituting a "serious drug offense" under 18 U.S.C. § 924(e)(1). Cr. doc. 39 at 11-13. It follows that Hilliard was not ineffective in failing to contest Young's status as an armed career criminal under § 924(e). Young's § 2255 motion therefore must be **DENIED.** Cr. doc. 38.

**SO REPORTED AND RECOMMENDED** this 6th day of August, 2012.

*/s/ M. Smith*
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**